## METROPOLITAN LIFE INS. CO. v. BARELA.

### No. 2595.

Court of Civil Appeals of Texas. El Paso.
Dec. 3, 1931.

Rehearing Denied Dec. 17, 1931.

H. D. Stringer and R. A. D. Morton, both of El Paso, for appellant.

Chas. Owen and Knollenberg & Cameron, all of El Paso, for appellee.

WALTHALL, J.

The appellant is a mutual life insurance company, and on December 31, 1923, issued a policy of group life insurance No. 2000–G to the Southern Pacific Company, and, under date of December 31, 1923, issued its certificate serial No. 7365, showing that appellee, Placido Barela, was insured under and subject to the terms and conditions of the group policy in the sum of $1,500.

Appellee, Placido Barela, while engaged as a machinist in the Texas & New Orleans Railway shops in El Paso, Tex., and during the life of the policy and his certificate, had his right hand injured by having it cut by a crank pin on a wheel lathe, whereby it was mashed, necessitating an amputation of four fingers and a part of the palm of the hand. Appellee pleaded substantially the facts as stated and in the trial court and here contends that the amputation of the part of the right hand as stated caused him to be permanently and totally disabled as the result of bodily injury from performing any work for compensation or profit, thereby entitling him to recover under the terms of the policy sued on.

Appellant's group policy, on which the suit was brought, contains a total and permanent disability clause which reads as follows: *"Total and Permanent Disability Benefits.* Upon receipt at the Home Office in the City of New York, of due proof that employee, not working in Mexico, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as a result of bodily injury, or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will, in lieu of the payment at death of the insurance on the life of the said employee, as herein provided, pay equal monthly installments as hereinafter described to said employee, or to a person designated by him for the purpose or if such disability is due to, or is accompanied by, mental capacity, to the beneficiary of record of said employee. * * * Without prejudice to any other cause of disability, the entire and irrecoverable loss of the sight of both eyes, or loss of use of both hands, or of both feet, or of one entire hand and one entire foot, will constitute total and permanent disability within the meaning of this provision."

The certificate issued to Barela provides as follows: "Any employee shall be considered as totally and permanently disabled who furnishes due proof that as a result of bodily injuries suffered, or a disease contracted while insurance was in force and prior to his sixtieth birthday, he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit."

The certificate then continuing provides as in the policy that, upon receipt of due proof of such disability, appellant company will pay to such employee equal monthly installments based on the amount of insurance in force on such employee at the date of receipt of proof of such disability as shown by the table stating the amount of insurance, number of monthly installments, and amount of each installment, but, as no question is made as to the amount due, if any, we need not state the table; the contention being that under the terms of the policy, and the evidence offered on the trial as to the injury sustained, no amount is due.

The court refused to instruct the jury peremptorily in favor of appellant, as requested, and submitted the case to a jury on one special issue, and, the answer being in favor of appellee, the court entered judgment for appellee for the sum of $310.50, representing the monthly payments from November 1, 1930, at the rate of $51.75 per month.

The appellant insurance company prosecutes this appeal.

Opinion.

The court overruled appellant's submitted instruction to find in its favor, and submitted the case to the jury as follows:

"Question No. One: Do you find from the preponderance of the evidence that as a result of the injury to his right hand on the 3rd day of May, 1928, plaintiff became totally and permanently disabled, so as to be prevented from engaging in any occupation and performing any work for compensation or profit? Answer yes or no.

"Total disability, within the meaning of the foregoing issue is such disability as would prevent the plaintiff from performing any profitable work with reasonable efficiency; and permanent disability is such disability that from which there can be no recovery."

The jury answered "Yes."

Appellant submits that under the evidence plaintiff was not permanently and totally disabled from performing any work for compen-

sation or profit, and for that reason it was error to refuse its peremptory instruction in its favor.

Appellant also submits error in the court's definition of what constitutes a total and permanent disability in using the phrase "with reasonable efficiency," because the phrase varies the terms of the contract as expressed therein.

Appellant submitted the following instruction: "You are instructed that one is considered as totally and permanently disabled, within the meaning of the policy sued on, who, as a result of bodily injury is permanently and continuously and wholly prevented from performing any work for compensation or profit."

Error is assigned to the court's refusal to give the charge.

Appellant also submitted an instruction making the term "total and permanent disability" apply not only to plaintiff's usual occupation, but to any other occupation for compensation or profit, and error is assigned to the court's refusal to give that charge.

The questions presented arise on the proper construction to be given the insurance policy together with the certificate and on the evidence as to the inability of appellee, by reason of the injury complained of, to perform work for compensation or profit, as contemplated in the group policy and certificate; the two constituting indivisible parts of one contract, the certificate being construed in connection with the policy and in conformity to its terms. Wann v. Metropolitan Life Ins. Co. (Tex. Com. App.) 41 S.W.(2d) 50.

The certificate in the Wann Case, supra, is identical with that in the instant case. In that case the suit not being on the policy, but on the certificate, the case was reversed and remanded by the Commission of Appeals.

The policy in Commonwealth Bonding & Casualty Ins. Co. v. Bryant (Tex. Sup.) 240 S. W. 893, obligated the insurance company to pay a weekly indemnity to Bryant, a railroad conductor, if Bryant should sustain bodily injury which should immediately, continuously, and wholly disable and prevent him from performing "any and every kind of duty pertaining to his occupation," that of a railroad conductor.

In the Bryant Case the Supreme Court construed the contract to mean that the larger indemnity was promised if the injuries rendered the railroad conductor "substantially unable" to perform every material duty pertaining to his occupation as conductor.

In Fidelity & Casualty Co. of New York v. Getzendanner, 93 Tex. 487, 53 S. W. 838, 55 S. W. 179, 56 S. W. 326, the policy provided against external bodily injuries which "wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation" (visiting yards and ranches, buying and selling cattle not in transit). The court in submitting the issue of total disability said, in substance, that, if the injury sustained disabled and prevented the insured from performing any and every kind of duty which was materially essential to his occupation in the manner reasonably as effective as same would have been performed had he not sustained the injury, the jury would find for plaintiff. The Fort Worth court said that the expression used in the charge had the effect of making partial disability the equivalent of total disability, and that the vice in the charge is the language quoted. The case reached the Supreme Court on a dissent. Judge Gaines, speaking for the court, said: "Our conclusion is that the majority of the court correctly held that there was error in the charge, and our opinion will be so certified."

In Commonwealth Bonding & Casualty Ins. Co. v. Bryant (Tex. Sup.) 240 S. W. 893, the policy obligated the insurer to pay a weekly indemnity aggregating the amount sued for if the insured, a railroad conductor, sustained bodily injuries which should "wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation"; the policy obligating the insurer to pay one-half the weekly indemnity for not exceeding 26 weeks "if such injury should not wholly disable the insured, as above, but shall immediately * * * and continuously disable and prevent him from performing one or more important daily duties pertaining to his occupation." The Supreme Court said: "The court will not give such a literal interpretation to the language of this contract, wherein the larger weekly indemnity is promised, as to practically relieve the insurer of all obligation thereunder. * * * The language of the policy is fairly and justly susceptible of the interpretation, which, we think, should be given to it, that the larger indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation"—and referred to Fidelity & Casualty Co. v. Getzendanna, 93 Tex. 487, 56 S. W. 326, 53 S. W. 838, 55 S. W. 179; Fidelity & Casualty Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806, 808, and other cases.

We refer to the Bryant Case, for the reason only that the court used, the expression "substantially unable" in stating the extent of the injury sustained by Bryant in the performance of his duty.

The policy in the instant case became payable only when the proof showed that the insured, by reason of the injury, was totally and permanently disabled from engaging in any occupation and performing any work for compensation for profit. We have concluded that it was not error, in the court's charge,

in defining what constitutes a total and permanent disability, to use the phrase "with reasonable efficiency," because, in our opinion, it was not necessary that the proof should show that his injury to his hand disabled the insured to such extent that he had no physical ability to perform any kind of work for compensation or profit. The use of the phrase in the charge, "with reasonable efficiency," in our opinion, did not have the effect of making partial disability the equivalent of total disability, or enlarge the terms of the policy by the phrase used in the charge; total disability being a relative matter depending upon the ability of the insured to engage in the performance of the work sought to be done. Commonwealth Bonding & Casualty Ins. Co. v. Bryant, supra; Hohn v. Inter-State Casualty Co., 115 Mich. 79, 72 N. W. 1105.

However that may be, the supposed vice in the charge by the use of the phrase above discussed becomes immaterial in the disposition to be made of the case in view of the undisputed evidence. The evidence is too extensive to quote, and we state only briefly the facts shown. Before the injury in the loss of a portion of his hand as stated, Barela worked as a machinist for the Galveston, Harrisburg & San Antonio Railway Company on a wheel lathe. His hand was injured while so working. After a part of his hand had been amputated, as stated, and he had sufficiently recovered, he returned to work for the railroad company, and was put to work on what is called the "electric welder," and thereafter on the "threading machine," threading spools, then he was put to work in the "tool room," and then he went back to work as a machine helper, where he worked regularly from the 28th of August, 1928, until September, 1930, when the railroad company reduced the force, and Barela, with a number of other employees, was let out on account of the depression existing in this and other parts of the country. During the time he worked after his injury he was paid wages from 53 cents to 79 cents an hour. It is true he was more or less handicapped and worked with difficulty, but he worked and received wages until discharged for the reason stated. It is true, as disclosed by the evidence, Barela, like many others, has applied for work, and work different from that he had been accustomed to do, and has not been employed. But the policy does not indemnify the insured against being laid off, or inability to get work, but against bodily injury resulting in total inability to perform any work for compensation or profit. The fact that Barela, after recovering from the immediate effects of his injury, worked for about two years for the same employer as before his injury, and with apparent satisfaction to both employer and employee, and was let out only because of conditions other than his ability and efficiency to work, demonstrates his ability to work for profit at some kind of work.

In Buckner v. Jefferson Standard Life Ins. Co., 172 N. C. 762, 90 S. E. 897, in a suit on a policy which provided for liability of the insurance company, similar to that here, the Supreme Court of North Carolina said: "If the policy contained an agreement to pay in case plaintiff was totally disabled from following his usual occupation (as was the contract in many of the adjudicated cases), we should hold that he is entitled to recover upon the facts of this case. But the evidence fails to disclose a total disability that will 'permanently, continuously, and wholly' incapacitate plaintiff 'from pursuing any and all gainful occupations.' The authorities are practically unanimous that under the terms of this policy plaintiff cannot recover without showing a bodily injury that will incapacitate him, not only from following his usual avocation of fireman, but also from pursuing any other gainful occupation. The language is too plain, and the meaning too unmistakable, to permit an enlargement of the terms of the contract by construction. It is unfortunate for the plaintiff, but 'it is so nominated in the bond.'"

Appellee cites us to United States Fidelity & Guaranty Co. v. Hardeman, 22 S.W.(2d) 1112, by this court. That suit was for compensation during the time of total disability to work. The evidence sustained the finding of total disability for the time allowed by the court.

The same might be said of Winters Mutual Aid Ass'n, Circle No. 2 v. Reddin (Tex. Civ. App.) 31 S.W.(2d) 1103. Reddin was a barber, and by reason of fallen arches in his feet the jury found that he could not stand on his feet and work at his trade. The evidence seems to sustain the finding. The case was tried as an occupational case. A writ of error was granted and is pending.

While the jury found the fact of disability in appellee's favor, we have concluded that the undisputed evidence shows conclusively that appellee was not so disabled as the result of a partial loss of his hand as to prevent him from engaging in any occupation and performing any work for compensation and profit, and for that reason the case must be reversed.

The facts having been fully developed, the case is reversed, and judgment here rendered for appellant.